UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WILFRED GUY, SR.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 13-2792 c/w<br>      13-5033** |
| **BEVERLY T. KELLY, ET. AL** | **SECTION: "E" (4)** |

## PARTIAL REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) § 1915(e)(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

### I.   Factual and Procedural Background

#### A.   The Complaint

The plaintiff, Wilfred Guy, Sr. ("Guy"), is an inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[1] Guy filed this consolidated *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Beverly T. Kelly, Executive Staff Officer of the BB Sixty Rayburn Correctional Center ("Officer Kelly") ("RCC"); Robert C. Tanner, Warden

---

[1] Rec. Doc. No. 1.

of BB Sixty Rayburn Correctional Center ("Warden Tanner"); Coleman Polk, Sergeant of the BB Sixty Rayburn Correctional Center ("Sergeant Polk"); Sergeant Ronnie Spears ("Sergeant Spears"); Keith Bickham, Deputy Warden ("Deputy Warden Bickham"); and James LeBlanc, Secretary of the Department of Corrections ("Secretary LeBlanc").

Under a broad reading, Guy alleges that the defendants, Officer Kelly, Secretary LeBlanc, Warden Tanner, Deputy Warden Bickham, Sergeant Polk and Sergeant Spears, each violated his First Amendment and Fourteenth Amendment rights by rejecting the grievance complaints he filed under RCC's Administrative Grievance Procedure. As to Officer Kelly, Guy also alleges that she violated his First and Fourteenth Amendment rights because he has a right to exercise his liberty interest by "utilizing the grievance system [to] express[] his freedom of speech."[2] As relief, Guy requests a transfer to another facility because of the constant harassment and threats on his life by the RCC staff and because of the enemies he has in that facility. He also seeks an award of nominal, compensatory, and punitive damages for his suffering and mental harassment. He also seeks reinstatement of thirty days of good time credits he lost after a disciplinary proceeding.

### B. The *Spears* Hearing and Plaintiff's Motion to Voluntarily Dismiss

On June 27, 2013, the Court conducted a hearing pursuant to *Spears v. McCotter*,[3] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call. During the *Spears* Hearing, the undersigned requested that the defendants provide the Court with copies of any grievances and /or disciplinary records to assist the court with understanding the

---

[2] Rec. Doc. No. 1, p. 6.

[3] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

nature of the problems and claims that exist between Guy and the Defendants.

Further, during the *Spears* Hearing, Guy requested permission to dismiss the claim against Secretary LeBlanc.[4] Shortly after the hearing, on July 1, 2013, Guy wrote a letter to the Court in which he noted his displeasure with the Court's inquiries into the factual basis of his claims against the defendants, specifically Secretary LeBlanc.[5] Guy also indicated his intent to withdraw his claims. Shortly thereafter, Guy submitted a similar letter addressed to the District Judge in which he complained that he was not allowed to read his prepared statement and instead was instructed to answer the Court's questions.[6] Guy acknowledged that the Court directed defense counsel to provide certain prison records so that his claim could be better evaluated.

On July 11, 2013, Guy filed a formal motion to withdraw his suit, and dismiss his claims without prejudice.[7] As a result of Guy's request, the undersigned issued a report and recommendation, *Wilfred Guy, Sr. v. James M. LeBlanc, Civ. Action 13-2792* and recommended the dismissal of the referenced action on July 25, 2013.[8] However, shortly after the report and recommendation was issued, Guy objected to the dismissal.[9] Due to Guy's change of heart, this Court revoked its previously issued Report and Recommendation, reinstating the claim against Secretary LeBlanc, as well as all other parties identified in the original complaint.[10]

---

[4] Rec. Doc. No. 13. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.

[5] Rec. Doc. No. 14.

[6] Rec. Doc. No. 15.

[7] Rec. Doc. No. 16.

[8] Rec. Doc. No. 18.

[9] *See* Rec. Doc. Nos. 19, 20, 22.

[10] Rec. Doc. No. 23.

On July 12, 2013, Guy filed an almost identical lawsuit. However, in the new lawsuit, he did not name Secretary LeBlanc as a defendant.[11] In all other respects, the lawsuits are identical. As a result, the newly filed matter entitled *Wilfred Guy Sr. v. Beverly Kelly et. al, C.A. 13-5033 R(4)* was consolidated with the originally filed lawsuit.[12] Having described the procedural posture of these consolidated matters, the court will proceed with a statutory review of the records.

C. **The Records**[13]

1. **Grievance One – ARP- RCC-2013-14**

On January 9, 2013, Guy filed a grievance pursuant to the Administrative Remedy Procedure RCC-2013-14, ("ARP") against Segreant Coleman Polk, who he alleged harassed him after learning that he wrote an ARP against him. Guy alleged that Polk was the orchestrator who had all "A, B, C and D teams whistling at him and referring to him as a whore." Guy also alleged that Sergeant Polk advised the teams that he was allegedly a "dick watcher" and that he liked to "look at dicks." Guy alleged that Sergeant Polk instructed one of his confidential informants to harass Guy and instigate a fight with him. He also alleged that he got into an argument when Sergeant Polk, who was accompanied by an orderly, when the breakfast trays came on Tier Three (3).[14]

In the ARP Guy advised Warden Tanner that it was not the first time that Sergeant Polk "created some wrong doing against [him] because he has constantly written ARP's of [Sergeant Polk's] malignant and improvident conduct" as an unprofessional security officer. Guy alleged that

---

[11]*See* No. 2:13-cv-5033, Rec. Doc. 1.

[12] *Id.* at Rec. Doc. No. 15; *see also* No. 2:13-cv-2792, Rec. Doc. No. 26.

[13]The defendant's counsel supplemented the record per the Court's request made during the *Spears* hearing. These records include documentation of all charges referenced herein. *See* Rec. Doc. No. 24, in No. 2:13-cv-2792.

[14]*See* Rec. Doc. No. 28. *See e.g.,* Rec. Doc. No. 1.

Sergeant Polk's behavior is in violation of his civil rights, as well as in violation of the United States Department of Justice's renewed June 10, 2009, contract with the Secretary of the Department of Public Safety and Corrections.[15]

Guy further stated that he personally spoke with Warden Tanner, and communicated with him through filing his ARP's about Sergeant Polk's constant harassment and threats, which violated his civil rights. Guy also advised Warden Tanner that even though there is a zero-tolerance policy about making noise, Sergeant Polk is "malignant," and violated this policy between August 20, 2012, and December 10, 2012, when he walked through Guy's tier and passed by his cell. Guy advised Warden Tanner that he is not a homosexual, nor does he "fool with homosexuals." He further indicated that "he respects every man who respects him and he does not play or joke with anyone; regardless of whether they are an inmate, convict or free man." Guy further described himself as antisocial because this is not his generation.

Guy further advised Warden Tanner that while he was writing an ARP, Sergeant Polk entered the lobby, "making all kinds of noise," and allegedly yelling in the presence of Warden Tanner. Guy also alleged that on Sun Unit, Sergeant Polk used to have sexual contact with homosexuals and to this day he is "possessed" about homosexuals. Guy alleges that Sergeant Polk is "in the closet" and would soon come out. Guy indicated to Warden Tanner that just like Sergeant Polk orchestrated the whistling and name calling of him, Sergeant Polk allegedly told Guy not to look at their "dicks." In the ARP, he also referred to himself as one of the most dangerous men in the facility and that he has no problem "seeing his blood" show. However, Guy stated that a man who "makes his blood show would never forget it," as he states that the only reason he is

---

[15]*Id.*

incarcerated is because "the person" lived to testify against him.

Guy also describes himself as a man that "no one would want for an enemy," but notes that there are "fools who cannot think;" which he believes is one of the reasons why he is now in protective custody. He also believes that he is in protective custody so that he cannot hurt anyone, and so that no one – like Sergeant Polk, Sergeant Temple, confidential informants – or anyone else, can hurt him. However, Guy believes that he is in danger, even though he acknowledges that Warden Tanner stated that his cell is safe. He alleges that he may be unsafe because Sergeant Polk and Sergeant Spears walk past his cell and "point at him like [they] have a gun in their hands."

He also alleges that Sergeant Spears attempted to hit him while he was entering the shower handcuffed. He alleges that Sergeant Spears now works during the day in Sleet lock down, whistles and looks into Guy's cell while he is attempting to do legal work. As a result, Guy alleges that he sleeps with his head near his writing desk so that he cannot look out of the cell door and see anything. Guy, also stated that he did not understand why Warden Tanner, as the administrator, would find it problematic to transfer him given his age, sixty-seven (67), to another location. He thereafter questioned Warden Tanner's mind and sense in allowing people like "Sergeant Polk, Sergeant Alford and Sergeant Spears" to work at the prison, and questioned whether Warden Tanner wanted these sergeants to eventually become inmates.

Guy also requested the removal of Sergeant Polk, Sergeant Alford and Sergeant Spears out of the Sleet Unit, and / or in the alternative, requested he be transferred to another facility. He stated that the constant threats and harassment would end up "negative for [Warden Tanner] as an administrator if he continued to allow them to go on." He also stated that he informed his family about his situation, and that they were concerned about his accommodations and requested that

Warden Tanner "do the right thing" and put a stop to everything before something bad occurs.

### a. Disciplinary Charge Arising out of ARP- RCC-2013-14

On January 10, 2013 after receiving the first grievance, Guy was charged by Officer Kelly with making threats and disrespectful statements against staff in his request for an Administrative Remedy, dated January 9, 2013, in violation of Rules Three (3) "defiance" and Seven (7) "disrespect." On January 11, 2013, Guy went before the Disciplinary Board, pleading not guilty, arguing that he was exercising his right of free speech. He was ultimately found guilty by the Disciplinary Board, and was thereafter sentenced to "thirty (30) days loss of good time."[16]

Not satisfied with this outcome, Guy appealed the Disciplinary Board's decision to Warden Tanner. Warden Tanner affirmed the Disciplinary Board's decision on February 6, 2013, stating that Guy made threats and disrespectful statements against the staff of the facility in a request for Administrative Remedy. Warden Tanner also advised Guy that while he is encouraged to present his grievance in detail, his rights are not being violated when he is disciplined for using that forum to threaten and make false and abusive statements concerning staff.[17]

Not satisfied with Warden Tanner's decision, Guy appealed Warden Tanner's decision affirming the Disciplinary Board's decision to the Secretary of Public Safety and Corrections, James LeBlanc ("Secretary LeBlanc"). On March 7, 2013, Secretary LeBlanc affirmed the decision of Warden Tanner and the Disciplinary Board, noting that the language used in Guy's ARP was clear, concise and presented convincing evidence of guilt of the violations as reported.[18]

---

[16] *See* Rec. Doc. 28.

[17] Appeal from the Disciplinary Board, RCC-2013-30, 02/06/13; ROC Appeal Decision, 02/06/13.

[18] Disciplinary Board Appeal, RCC-2013-30, 03/07/13.

      **b**.      **Administrative Investigation & Decision on Grievance ARP-RCC 2013-14**

While the disciplinary board took action against Guy as a result of the language he used in the ARP, the prison also proceeded to evaluate the substance of the grievance. According to the records, ARP-RCC-2013-14 was received on January 14, 2013, accepted on May 17, 2013, and denied on May 30, 2013.[19] On January 14, 2013, Guy was advised that the ARP procedure allowed for backlogging of multiple requests, that they would handle the first request and his other ARP's would be logged and set aside for handling at a time more appropriate.[20]

On May 17, 2013, Captain Warren was assigned to investigate and prepare a report regarding Guy's complaints of harassment.[21] The unit head provided a written response to Guy regarding his complaints against Sergeant Polk, and advised Guy that Sergeant Polk denied the allegations, and stated that they were false. Guy was also advised that Captain Rick Warren ("Captain Warren") also interviewed officers who work on the unit with Sergeant Polk. Each of the officers denied ever observing Polk harass or offend Guy in any manner. Finding that there was no evidence to substantiate Guy's complaint, ARP-RCC-2013-14, was denied. On June 1, 2013, Guy responded to Captain Warren's decision with a recommendation that Sergeant Polk and Captain Warren subject to a polygraph test.

      **2.**      **Grievance Two ARP-RCC-2013-36**

On January 22, 2013, Guy submitted a grievance to Warden Tanner against Officer Kelly, the Administrative Remedies Officer who issued and signed the Disciplinary Report as a result of

---

[19]ARP Procedure & Property Claims, Input Screen, 01/14/13.

[20]Memorandum from Cynthia Crain to Wilfred Guy, 01/14/13.

[21]Memorandum from Cynthia Crain to Captain Rick Warren, 05/17/13.

Guy's initial grievance, for what he claims is her alleged retaliation for filing a disciplinary charge against him.[22] Guy submitted this grievance to Warden Tanner because he believed Officer Kelly to be under his supervision. Guy alleges that Officer Kelly arbitrarily and capriciously retaliated against him when she filed a disciplinary report alleging that he violated Rules Three (3) "defiance" and Seven (7) "disrespect." He alleges that she wrongly interpreted his words in ARP-RCC-2013-14.

As relief, Guy sought a lateral transfer, nominal, compensatory and punitive damages. This grievance was rejected. Deputy Warden Keith Bickham provided the reason for the rejection was that multiple complaints could not be filed in one Administrative Remedy Proceeding. He stated that the proper means to pursue a formal grievance is through the disciplinary appeals process.

### 3.   **Grievance Three – ARP-RCC-13-0036**

On January 29, 2013, Guy submitted a grievance to Warden Tanner against Deputy Warden Keith Bickham alleging that he arbitrarily and capriciously adversely retaliated against him by rejecting the ARP he filed against Officer Kelly on January 20, 2013, in violation of his civil rights. He alleges that he has a substantive liberty interest that protects his ability to exercise his right to "state grievance procedures" in violation of prison procedures. He also filed the ARP against Warden Tanner because Officer Kelly and Deputy Warden Keith Bickham are under his supervision. Guy requested a lateral transfer from the prison, as well as nominal compensatory and punitive damages.

On January 31, 2013, Guy submitted a written request to the ARP screening officer inquiring into the status of his alleged inappropriate and adverse retaliation in response to the January 29, 2013 ARP that he submitted. The prison responded that the ARP was already addressed through

---

[22] ARP Procedure & Property Claims, Input Screen, 01/22/13.

another ARP, identified as "RCC-13-0036" which was rejected. Guy thereafter questioned the competency of the person completing the response, indicating that he intended to file a grievance based on the prison's response because it allegedly violated his First Amendment Rights, as it was in "adverse retaliation."

### 4.     Grievance Four ARP-RCC-2013-109

On February 19, 2013, Guy filed another grievance, and against Sergeant Ronnie Spears ("Sgt. Spears") for his alleged unprofessional and imprudent conduct that allegedly occurred on Sunday, February 17, 2013. Sgt. Spears allegedly used profane language and made constant threats to physically hurt and / or kill Guy. Guy then alleges that he was placed in handcuffs and told to go sit on a bench on Sleet 4. Guy alleges that while he sat on the bench, Sergeant Traitor and Lieutenant Seal began speaking, while Sergeant Manley walked to the men and spoke with Lieutenant Seal. Guy states that Lieutenant Seal first entered the lobby, and sat near him, allegedly using profane language and threatening him. Soon thereafter, Sergeant Traitor also entered the lobby and sat at the desk with Sergeant Spears, allegedly continuing to make threats and use profanity.

This grievance was filed against Warden Tanner and Sergeant Spears. Guy filed this grievance against Warden Tanner because he is the administrator responsible for the correctional officers. He filed this grievance against Sergeant Spears because of his alleged use of profanity, threats and harassment against Guy. Guy allegedly believes that he is in constant danger as he contends that Sergeant Spears wants to cause him bodily harm. Guy alleges that Sergeant Spears' harassment against him has become so outrageous that he has written his family to request that they contact the FBI. He allegedly told his family that if he is found dead and told that it was suicide, they should not believe it.

Guy also complained about the person who Warden Tanner selected to review his grievance. He suggests that his grievance was sent to the commanding supervisor so that the deputy and major could coincide stories. He again directly tells Warden Tanner that he is not a professional person because of who he selected to review the grievance, and stated that he, Warden Tanner, "would [soon] be deprived, and become an offender like Guy."

He sought nominal, compensatory, punitive damages and a transfer to another prison. However, this ARP was denied on February 21, 2013. The stated reason for doing so was that multiple complaints cannot be filed in a single Administrative Remedy Procedure.

On February 27, 2013, Guy filed an additional ARP against Warden Tanner for his retaliation and rejection of Guy's grievances which allegedly violate his "first amendment civil rights to freedom." He alleged that the Warden abused his authority by arbitrarily and capriciously depriving him of his civil rights and in violation of the Department's policies. He seeks nominal, compensatory and punitive damages against Warden Tanner for violating his civil rights. This grievance was ultimately rejected on March 4, 2013, because the Administrative Remedy Procedure does not allow for an ARP to be filed on the rejection of an ARP.

## II.  **Standard of Review**

Title 28 U.S.C. § 1915A and Title 42 U.S.C. §§ 1997e(c)(1) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous or otherwise fail to state a claim for which relief can be granted. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**III**. **Analysis**

    **A.**    **Retaliation Claim against Officer Kelly**

Guy attempts to establish a claim of retaliation against Officer Kelly for exercising his First Amendment rights. A prison official may not retaliate against or harass an inmate for exercising his right of access to the courts or his other First Amendment rights, such as his right to complain about a guard's misconduct through the grievance process. *Morris v. Powell,* 449 F. 3d 682, 684 (5th Cir. 2006); *Woods v. Smith*, 60 F.4d 1161, 1164 (5th Cir. 1995).

To prove a retaliation claim under § 1983, a prisoner plaintiff must establish: (1) a specific constitutional right at issue; (2) the defendant's intent to retaliate against the prisoner for his exercise of that right; (3) a retaliatory adverse action; and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (citing *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998)). The Fifth Circuit has also cautioned that "[t]o assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully

scrutinize these claims." *Woods*, 60 F.3d at 1166. For this reason, "mere conclusory allegations of retaliation" or a prisoner's own beliefs are insufficient to establish retaliation.

The inmate must prove more than his own personal belief that he is the victim of retaliation. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999); *see also Randle v. Woods*, 299 F. App'x 466, 468 (5th Cir. Nov. 19, 2008); *see e.g., Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Instead, the inmate must show causation by proving that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Woods*, 60 F.3d at 1166. This is recognized as a "significant burden" that requires the inmate to "produce direct evidence of motivation or, the more probable scenario, . . . 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Id*. (quoting *Randle v. Woods*, 299 Fed. App'x 466, 468 (5th Cir. 2008); *Shelton v. Lemons*, No. 11-20670, 2012 WL 3493982, at *2 (5th Cir. Aug. 15, 2012). Therefore, the alleged retaliatory act must be more than *de minimis*, which means they must be capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *See Decker v. McDonald*, No. 5:09cv27, 2010 WL 1424322, at * 15 (E.D. Tex. Jan. 11, 2010) (citing *Morris*, 449 F.3d at 687; *Jones v. Greninger*, 188 F.3d 299, 310 (5th Cir. 1997).

Under these standards, the inmate must point to a specific constitutional right that has been violated as a direct result of the retaliatory action. *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996); *Woods*, 60 F.3d at 1166. An adverse action under the third prong is an act "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). The Court stated that "this threshold is intended to weed out only inconsequential actions and is not a means to excuse more serious retaliatory acts by prison officials." *Id*. For this reason, "mere conclusory allegations of retaliation" or a prisoner's own

beliefs are insufficient to establish retaliation. *Jones*, 188 F.3d at 325; *see also Randle v. Woods*, 299 F. App'x 466, 468 (5th Cir. Nov. 19, 2008). Instead, a prisoner must either "produce direct evidence of motivation" or "allege a chronology of events from which retaliation may plausibly be inferred." *Jones*, 188 F.3d at 325.

The Record confirms that Guy's claim arising out of the January 9, 2013 grievance is not frivolous. The grievance records indicate that Guy complained that several prison officials were harassing him and made references to him being a homosexual. One day after Guy filed his grievance, Officer Kelly filed a disciplinary charge against Guy, based upon the threatening and terse language he used in his ARP. Guy was charged with making threats and disrespectful statements against the staff in a request for an Administrative Remedy, in violation of Rules Three (3) "defiance" and Seven (7) "disrespect," by the Disciplinary Board. He was thereafter sentenced to "thirty (30) days loss of good time." He appealed the decision, seeking to have his 30 days restored, but his sentence was affirmed by the Secretary of Public Safety and Corrections.

The Fifth Circuit found in *Hart v. Hairston*, 343 F.3d 762 (5th Cir. 2003) that an inmate's punishment of twenty-seven (27) days of commissary and cell restrictions constituted an adverse retaliatory act which was more than *de minimis*. *Hart*, 343 F.3d at 764. The Court found that the inmate therefore stated a cognizable claim against the officer who filed the disciplinary charge. This case is factually similar to the instant action. Here, Officer Kelly initiated and filed the disciplinary complaint against Guy which resulted in a sentence of "30 days loss of good time." This Court, like the *Hart* court, finds that a loss of 30 days good time is more than a *de minimis* injury. As a result, the Court finds that Guy's claim against Officer Kelly is cognizable and should not be dismissed for frivolousness.

14

### B. Harassment Claims against Sergeant Polk and Sergeant Spears

The essence of the ARP's filed by Guy allege that he was being harassed by Sergeants Polk and Spears. Guy alleges that the harassment consisted of the sergeants whistling at him and making references to him being a homosexual.

Claims of verbal insults, threats and derogatory remarks are not cognizable under §1983. *Robertson v. Plano City*, 70 F3d 21, 24 (5th Cir. 1995). The Fifth Circuit has stated that "in the Eighth Amendment context, 'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations'." (citations omitted) *Id.*; *accord Watson v. Winborn*, 67 Fed. Appx. 241, 241, 2003 WL 21108479 (5th Cir. Apr. 21, 2003); *Calhoun v. Hargrove*, 312 F.3d 730, 34 (5th Cir. 2002); *Vessell v. Gusman*, No. 0-2294, 2006 WL 2067723, at *2 (E.D. La. July 19, 2006).

It is well settled that "claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment . . ." *Jackson v. Liberty County*, 860 F. Supp. 360, 363(E.D. Tex. 1994). In this case, Guy's allegations of verbal abuse and harassment by allegedly being called a homosexual and being whistled at do not rise to the level of a constitutional violation. Therefore, Guy's claims against Sergeant Polk and Sergeant Spears should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to §1915(e), §1915A, and §1997e.

### C. Non-Exhaustion of Administrative Remedy Procedure

It is unclear whether Guy intends to assert a claim as a result of Grievances 2-4 listed above. Even if Guy did intend to do so, any prospective claim arising out of these ARP's should be dismissed for failure to exhaust. The Prison Litigation Reform Act of 1996 ("PLRA"), as codified

at 42 U.S.C. § 1997e(a) requires that prisoners must properly exhaust "such administrative remedies as are available" prior to filing a §1983 complaint related to prison conditions. *Woodford v. Ngo,* 548 U.S. 81, 83-84 (2006).

In short, 42 U.S.C. § 1997e(a) now mandates exhaustion of administrative remedies, stating that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997(e)(a); *see Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003); *Clifford v. Gibbs*, 298 F.3d 328, 329 (5th Cir. 2002).

Exhaustion under the PLRA is an affirmative defense and is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time. *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010); *see also*, *Jones v. Brock*, 549 U.S. 199, 216 (2007) (concluding that exhaustion under the PLRA is an affirmative defense). The court does not "inquire whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness;" prisoners simply "must exhaust such administrative remedies as are available, whatever they may be." (citations and internal quotation marks omitted) *Alexander v. Tippah County, Miss.*, 351 F.3d 626, 630 (5th Cir. 2003).

The Supreme Court has held that the exhaustion requirement mandates "proper exhaustion," which means compliance with prison procedural rules and deadlines. *Woodford*, 548 U.S. at 92-93. Furthermore, substantial compliance with administrative procedures is insufficient to permit pursuit of a federal lawsuit. *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). Unless the prisoner pursues his "grievance remedy to conclusion," he has not exhausted "available remedies." *Id.*

Thus, exhaustion does not merely require the plaintiff to initiate the prescribed administrative

16

procedures, but also to pursue them to their appropriate conclusion and await their final outcome before seeking judicial intervention. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002). Exhaustion must be completed within the state system to allow the federal courts to take cognizance of the prisoner's claim. *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998). When a prisoner fails to exhaust his administrative remedies prior to filing suit without a valid excuse, a court properly dismisses the action without prejudice to its refiling after the prisoner exhausts his administrative remedies. *See Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998). In addition, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright*, 260 F.3d at 358.

Here, the record evidence that while Guy filed Grievances 2-4, which were rejected, he did not file a request for review at the next appellate decision level, which here would have been through the disciplinary appeals process. As a result, even if Guy intended to seek review or assert a claim arising out of these grievances, he failed to exhaust the available administrative remedies before filing them in this Court. Therefore any claims that could have arisen out of these grievances are not exhausted and are therefore frivolous, pursuant to §1915(e), §1915A, and §1997e.

### D.  Claim against Deputy Warden Keith Bickham

Guy sued Deputy Warden Keith Bickham ("Bickham") because he denied his ARP-RCC 13-0036, which Guy filed against Officer Kelly and Warden Tanner. As a result, Guy claims that Bickham violated his First Amendment Rights.

The Fifth Circuit has clearly stated that a prisoner "does not have a constitutional right to a grievance procedure at all, and he has no due process liberty interest in having his grievances

resolved to his satisfaction." *Staples v. Keffer*, 419 F. App'x. 461, 463 (5th Cir.2011)(citing *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir.2005)); *see also Cole v. Abbott*, 91 Fed. App'x. 936, 937(5th Cir.2004)(holding no state-created liberty interest in grievance procedure). Additionally, an inmate does not have a federally protected liberty interest in having a prison grievance investigated or resolved to his satisfaction. *Geiger*, 404 F.3d at 373–74; *Propes v. Mays*, 169 Fed. App'x 183, 184-85 (5th Cir. 2006).

Further, the failure of the prison officials to follow required grievance procedures does not present a constitutional claim. *See Lizotte v. Leblanc*, 456 Fed. App'x. 511, 513 (5th Cir.2012)(citing *id*.); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir.1996); *Guiden v. Wilson*, 344 F. App'x. 980, 981 (5th Cir.2009) (citing *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir1986) (determining that "[a] violation of a prison rule by itself is insufficient to set forth a claim of a constitutional violation")). Because Guy does not have a constitutional right to an effective grievance procedure, under either the First or Fourteenth Amendments, he cannot maintain a claim against Bickham. Therefore, Guy's claim against Bickham should be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to §1915(e), §1915A, and §1997e.

### E.     Claims against Secretary LeBlanc and Warden Tanner

Guy named James LeBlanc, Secretary of the Department of Corrections ("Secretary LeBlanc"), as a defendant in this action for his denial of Guy's appeal request for review of Disciplinary Board's decision. Guy also names, Warden Robert C. Tanner ("Warden Tanner") as a defendant because he affirmed the decision of the Disciplinary Board against him.

Guy initially indicated that he sought to dismiss the claim against Secretary LeBlanc during his *Spears* hearing, as well as by his filing of a formal motion to withdraw his complaint. However,

he then objected to the undersigned's report and recommendation carrying out his wishes. As a result, the dismissal was revoked.[23]

In the prison context, "disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974). Instead, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.* Accordingly, prisoners only enjoy procedural safeguards to the extent necessary to protect substantive rights. *See Washington v. Harper,* 494 U.S. 210, 220 (1990) ("Procedural protections must be examined in terms of the substantive rights at stake.").

The United States Supreme Court has held that the only liberty interest a prisoner may protect through § 1983 is "freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). While *Sandin* made it clear that punishments which impact upon the duration of confinement, or which exceed the sentence in an unexpected manner, may give rise to protection by the Due Process Clause, more routine disciplinary action will not invoke this constitutional protection.

To the extent that Guy contends that both Warden Tanner and Secretary LeBlanc should have granted the appeals of his disciplinary charges, he does not have a constitutional right to a favorable appeal decision. *Banks v. Cain*, Civ.A.03-310-D-M1, 2003 WL 23997326 at *1-2 (M.D. La. Aug. 12, 2003).

---

[23]*See* Rec. Docs. 13, 16, 18, 23.

**IV.     Recommendation**

It is therefore **RECOMMENDED** that Plaintiff, Wilfred Guy, Sr.'s ("Guy") 42 U.S.C. § 1983 claims against defendants, Robert C. Tanner, Warden of BB Sixty Rayburn Correctional Center; Coleman Polk, Sergeant of the BB Sixty Rayburn Correctional Center; Sergeant Ronnie Spears; Keith Bickham, Deputy Warden; and James LeBlanc, Secretary of the Department of Corrections be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e.

Its is further **RECOMMENDED** that Guy's §1983 claim against Executive Staff Officer, Beverly T. Kelly, of the BB Sixty Rayburn Correctional Center should be allowed to proceed forward as it is cognizable.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[24]

New Orleans, Louisiana, this 15th day of January, 2014

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[24]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.