## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WILFRED GUY SR.**                                                **CIVIL ACTION**

**VERSUS**                                                         **NO.  13-2792 c/w**
                                                                 **13-5033**

**JAMES M. LEBLANC, ET AL.**                                      **SECTION "E"(4)**

## REPORT AND RECOMMENDATION

Before the Court is a **Motion to Dismiss Based on Qualified Immunity (Rec. Doc. No. 63)**
filed by the sole remaining defendant, Beverly T. Kelly.  The motion and these consolidated matters
were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary
hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant
to **28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and
(2)**.  Upon review of the entire record, the Court has determined that the motion and these matters
can be disposed of without an evidentiary hearing.

## I.      Factual and Procedural Background[1]

### A.      The Complaint

The plaintiff, Wilfred Guy Sr., an inmate incarcerated in the B.B. "Sixty" Rayburn
Correctional Center ("RCC") in Angie, Louisiana, filed these consolidated *pro se* and *in forma
pauperis* complaints pursuant to 42 U.S.C. § 1983 against Beverly T. Kelly, an Executive Staff
Officer at RCC, alleging that she retaliated against him for using the prison grievance procedures
when she filed a disciplinary charge against him.[2]  Under a broad reading, Guy alleged in the

---

[1]This report is addressed specifically to the plaintiff's claims against the remaining defendant, Beverly T. Kelly.

[2]Rec. Doc. No. 1.

complaints that Kelly violated his First and Fourteenth Amendment rights because he has a right to exercise his liberty interest in "utilizing the grievance system [to] express[] his freedom of speech."[3]

**B.      The *Spears* Hearing and Other Proceedings**

In an effort to further ascertain and clarify the nature of his claims, on June 27, 2013, the Court conducted a hearing pursuant to *Spears v. McCotter*,[4] and its progeny, with the plaintiff and counsel for the defendants participating in the conference by telephone.[5]  As previously reported, during the hearing, Guy requested to withdraw his claims against the defendants.[6]  Following the hearing, the undersigned issued a Report and Recommendation in compliance with Guy's request.[7] Thereafter, Guy voiced his discontent with the proceedings at the *Spears* Hearing and notified the Court of his decision to proceed forward with his claims.  He also filed his second, almost identical complaint on July 12, 2013, which forms the member consolidated case, No. 13-5033"E"(4).[8] Nevertheless, in connection with the original *Spears* Hearing, and because the grievance and disciplinary records were referenced by Guy in his pleadings and testimony as if part thereof, the Court ordered and received from defense counsel copies of the grievances and disciplinary records

---

[3]Rec. Doc. No. 1, p. 6.

[4]766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis the claims.  The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[5]Rec. Doc. No. 13. The plaintiff was sworn prior to testifying. The hearing was digitally recorded.  This hearing occurred prior to the filing of Guy's second suit and the consolidation of the actions.

[6]Rec. Doc. No. 14.

[7]Rec. Doc. No. 18 (later revoked and rescinded); Rec. Doc. No. 23.

[8]Rec. Doc. No. 26.

related to Guy's claims.[9]   The records relevant to Guy's claims against defendant Kelly are summarized here, as they were in the Court's prior Partial Report and Recommendation previously adopted by the District Judge.[10]

On January 9, 2013, Guy filed a grievance complaint pursuant to the Administrative Remedy Procedure at RCC and authorized by the Louisiana Department of Public Safety and Corrections ("DOC").   In the complaint numbered RCC-2013-14, Guy accused Sergeant Coleman Polk of harassment after learning that Guy filed a prior grievance complaint against Polk.  Guy detailed all of his complaints about Polk making menacing comments, inciting others to fight with Guy, and making noise in the cell area to aggravate Guy.  Most relevant to the remaining claims before the Court, Guy alleged that Polk was the orchestrator who had the other guards on the "A, B, C and D teams whistling at him and referring to him as a whore."   Guy also alleged that Sergeant Polk advised the guard teams that Guy was allegedly a "dick watcher" and that he liked to "look at dicks." Guy denied being a homosexual or that he "fool[ed] with homosexuals."

Guy also referred to Sergeant Polk's behavior as "malignant and improvident conduct" and said Polk was an unprofessional security officer.  Guy also alleged that on Sun Unit, Sergeant Polk previously had sexual contact with homosexuals and to this day he is "possessed" about homosexuals.  Guy further alleged that Sergeant Polk was "in the closet."  Guy also claimed that Sergeant Polk told him not to look at the other inmate's "dicks."

In the grievance complaint, Guy referred to himself as one of the most dangerous men in the facility and that he has no problem "seeing his blood" show.  However, Guy stated that a man who

---

[9]The records are filed under seal at Rec. Doc. No. 28.

[10]Rec. Doc. Nos. 61, 62.

"makes his blood show would never forget it," as he states that the only reason he is incarcerated is because "the person" lived to testify against him.  He warned that he was someone that "no one would want for an enemy."

In complaining about his placement in the prison, Guy also questioned Warden Tanner's mind and sense in allowing people like "Sergeant Polk, Sergeant Alford and Sergeant Spears" to work at the prison, and questioned whether Warden Tanner wanted these sergeants to eventually become inmates.  Guy requested the removal of Sergeants Polk, Alford and Spears from the Sleet Unit, and/or in the alternative, requested he be transferred to another facility.  He further stated that the constant threats and harassment would end up a "negative for [Warden Tanner] as an administrator if he continued to allow them to go on."  He also stated that he informed his family about his situation, they were concerned about his accommodations, and they requested that Warden Tanner "do the right thing" and put a stop to everything before something bad occurs.  Guy's grievance complaint (RCC-2013-14) was investigated and eventually denied as unsubstantiated.

In the meantime, when the grievance complaint was first received by the prison officials on January 10, 2013, Officer Kelly charged Guy with making threats and disrespectful statements against staff members in RCC-2013-14 in violation of Rule Three (defiance) and Rule Seven (disrespect).  Officer Kelly specifically referenced certain language used by Guy on pages two, three and four of his grievance complaint, language which will be further discussed later in this Report.  On January 11, 2013, Guy went before the disciplinary board at RCC and pleaded not guilty.  He argued that he was exercising his right of free speech in the grievance.  The board ultimately found him guilty of both charges, and sentenced him to loss of thirty (30) days of good time credits.

4

Dissatisfied with the conviction and sentence, Guy appealed the disciplinary board's decision to Warden Tanner.  Warden Tanner affirmed the decision on February 6, 2013, stating that Guy made threats and disrespectful statements against the staff of the facility in his grievance complaint. In his reasons, Warden Tanner advised Guy that, while he is encouraged to present his grievance in detail, his rights are not being violated when he is disciplined for using that forum to threaten and make false and abusive statements concerning the staff.

Guy also appealed Warden Tanner's decision to DOC Secretary James LeBlanc.  On March 7, 2013, Secretary LeBlanc affirmed the decision of Warden Tanner and the disciplinary board, noting that the language used in Guy's grievance complaint was clear, concise and presented convincing evidence of guilt of the violations as reported.

During the disciplinary proceedings against him, Guy filed a grievance complaint against Officer Kelly which was assigned RCC-2013-36.  He alleged that she brought the disciplinary charges against him in retaliation for his filing of the original grievance complaint in RCC-2013-14. Deputy Warden Keith Bickham rejected the grievance citing the prison rule that multiple grievance complaints could not be filed into one administrative remedy proceeding.  He advised Guy that the proper means to pursue his claim was through the disciplinary appeals process.

## C.     Kelly's Motion to Dismiss (Rec. Doc. No. 63)

Kelly argues that she is entitled to qualified immunity because she did not violate clearly established law when she brought the disciplinary charges against Guy for making threats against prison staff, and otherwise she acted in an objectively reasonable manner when she continued to process his grievance complaints.  Kelly concedes that the factual findings that the disciplinary write-up and loss of thirty days of good-time credits was more than a *de minimis* act, and agreed that

a prison official may not retaliate against or harass an inmate for exercising his First Amendment rights, referencing the Court's prior Partial Report and Recommendation and the cases cited therein.

Kelly contends, however, that Guy had no protected First Amendment right to make threats against the prison officials like he did in the grievance complaint. Kelly argues that Guy therefore failed to allege that the disciplinary charges she brought against him were in response to his exercise of a protected First Amendment right. She also suggests that she acted reasonably where she continued to process Guy's grievance complaint at issue and his other filings. For these reasons, Kelly concludes that Guy has failed to state a violation of his constitutional rights and that she is entitled to qualified immunity.

### D.   Guy's Opposition Memoranda (Rec. Doc. Nos. 65, 70)

Affording Guy every benefit of a broad interpretation of his opposition memoranda, he argues that Kelly acted arbitrarily and with misconception in construing the statements he made in his grievance complaint as threats.[11] He claims that, with the numerous grievance complaints he has filed in many prisons, Officer Kelly is the first prison official to falsify a disciplinary charge against him for exercising his First Amendment right to complain about prison guards. He contends that he has never threatened prison officials in any of his grievance complaints at any prison.[12]

Guy further contends that he argued to the disciplinary board that the charges brought by Officer Kelly were factually unfounded, but he was found guilty without investigation into his claims.[13] He argues that Kelly's retaliation for his good faith use of the administrative grievance

---

[11]Rec. Doc. No. 65, p.1; Rec. Doc. No. 70, p. 11.

[12]Rec. Doc. No. 65, p. 8.

[13]Rec. Doc. No. 70, p. 4.

procedures was a prima facie violation of his free speech and substantive due process rights, and defeats her claim for qualified immunity.[14]

## II.    Clarified Claim of False Disciplinary Charges

In reviewing Guy's claims against Officer Kelly and his oppositions to her motion to dismiss, the record more clearly reveals Guy's intent to also assert a claim against Officer Kelly for false disciplinary charges and violation of due process in that proceeding in addition to the remaining retaliation claim.  The motion is not addressed in the defendant's pending motion and was not substantively considered in the Court's previous rulings.  Nevertheless, the Court is required to *sua sponte* dismiss a claim in an *in forma pauperis* complaint when it fails to state a claim for which relief can be granted.  *See* 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see also*, *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995);  *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).  The Court's review of Guy's claims discloses that, under a broad reading, he has urged the separate claims of false disciplinary charges and denial of due process by Officer Kelly which must be addressed at this time and dismissed with prejudice for the following reasons.

As outlined previously, Guy was charged with prison rule violations for defiance and disrespect for statements made within the grievance complaint in RCC-2013-14.  As a result of his conviction by the disciplinary board, he was sentenced to thirty (30) days loss of good-time credits. As part of his relief in this case, Guy has requested monetary compensation and restoration of the good-time credits, which directly impacts the length of his sentence.  Because of this, Guy's

---

[14]Rec. Doc. No. 70, p. 5.

challenge to the validity of the disciplinary conviction and sentence, including due process violations and the falsity *vel non* of the charges (but not the retaliation claim) are not cognizable at this time.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court imposed a favorable termination requirement upon prisoner plaintiffs seeking relief under 42 U.S.C. § 1983.  The Court concluded that an inmate could not proceed with a § 1983 claim when the constitutional questions in that suit, if resolved favorably to the inmate, would necessarily undermine the validity of his conviction.  After *Heck*, the Supreme Court considered whether "a claim for damages and declaratory relief brought by a state prisoner challenging the validity of the procedures used to deprive him of good-time credits is cognizable under § 1983."  *Edwards v. Balisok*, 520 U.S. 641, 643 (1997).

In *Edwards*, a prisoner was charged with and found guilty of four prison rule infractions.  *Id*.  He was sentenced, *inter alia*, to loss of thirty (30) days of good-time credits which he had previously earned towards his early release.  The prisoner claimed that the disciplinary hearing officer concealed exculpatory witness statements and refused to ask specified questions of requested witnesses.  *Id*. at 644.  The Supreme Court found that this "principal procedural defect complained of by respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits."  *Id*. at 646.  As a result, the Court concluded that the prisoner's claim for declaratory relief and money damages was not cognizable under § 1983, because if the allegations of deceit and bias on the part of the decision maker were true, they would necessarily imply the invalidity of the punishment imposed.  *Id*. at 648.

Since that time, the *Edwards* doctrine has been applied to bar review of inmates' claims of false disciplinary charges where, if credited, resolution of the claim would necessarily imply the

invalidity of the finding of guilt and loss of good-time credits.  *See e.g.*, *Freeman v. Sims*, 558 F. App'x 412 (5th Cir. 2014); *Atchison v. Bodin*, 154 F.3d 417, 1998 WL 526900, at *1 (5th Cir. Jul. 29, 1998) (Table, Text in Westlaw); *Digges v. Jeffcoat*, 149 F.3d 1177 (5th Cir. 1998).  Likewise, *Heck* and *Edwards* stand to bar review of Guy's challenge to the propriety of the disciplinary conviction and sentence.

Under a thorough reading of the record, Guy does not allege and the Court's research does not disclose that Guy has successfully sought and obtained collateral relief on the disciplinary conviction and sentence.  Therefore, his claims of false disciplinary charges and violation of due process are not properly presented in this § 1983 action.  The claims must be dismissed with prejudice for failure to state a claim for which relief can be granted until such time as the *Heck* and *Edwards* conditions are met.  *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).

## III.    Analysis of Defendant's Motion to Dismiss

Before proceeding to address the defendant's motion, the Court must first explain why it is required by Fifth Circuit precedent to proceed beyond the otherwise clear mandates in *Heck* and *Edwards* to consider Guy's retaliation claim against Kelly, a claim which is obviously intertwined with the validity (or alleged falsity) of his disciplinary charges and ultimate loss of good-time credits.  In seeming disregard for the foregoing Supreme Court precedent, there exists a long line of cases in this Circuit which hold that *Heck* and *Edwards* do not apply to bar a claim that a disciplinary charge and conviction were the result of retaliatory action by a prison official.  *See, e.g.*, *Walker v. Savers*, 583 F. App'x 474, 475-76 (5th Cir. 2014) ("But because a prisoner need not demonstrate a favorable outcome of his disciplinary case in order to pursue a related retaliation claim, *Heck* does not bar the retaliation claim."); *Hanna v. Maxwell*, 548 F. App'x 192, 196 (5th Cir.

2013) ("When retaliation is alleged, an inmate need not show that a disciplinary conviction has been overturned."), *cert. denied*, 135 S. Ct. 101 (2014); *Mahogany v. Rogers*, 293 F. App'x 259, 260 (5th Cir. 2008) ("Mahogany's retaliation claim is not barred under *Heck* because favorable termination of allegedly retaliatory disciplinary proceedings is not a requisite of a retaliatory interference claim." (quotation marks and brackets omitted)).

These cases are rooted in the pre-*Edwards* opinion in *Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1995), where the Fifth Circuit held that a favorable termination requirement like that in *Heck* should not apply to cases involving retaliatory disciplinary claims.  The Fifth Circuit was concerned that such a requirement would allow prison officials to unilaterally thwart an otherwise valid retaliation claim simply by convicting a prisoner of a perhaps invalid disciplinary charge.  *Woods*, 60 F.3d at 1165.  Like the cases cited above, the *Woods* progeny has continued to allow consideration of retaliation claims without discussion or consideration of *Edwards* based on its laudatory reasoning.

In a concurring opinion to the more recent decision in *Hanna*, 548 F. App'x at 192, however, Circuit Judge Emilio Garza took the opportunity to "invite" the *en banc* Fifth Circuit Court to revisit the *Woods* doctrine because it was decided two years before the Supreme Court's mandate in *Edwards*.  *Hanna*, 548 F. App'x at 196-97.  Judge Garza concluded that, like the due process claims addressed in *Edwards*, retaliation claims involving a disciplinary proceeding that included the loss of good-time credits, fell "squarely within the ambit" of *Heck* and *Edwards* (referred to him as "*Balisok*").  *Id.*, at 197.  Judge Garza also noted that, unlike *Edwards*, *Woods* did not involve the loss of good-time credits, although the Fifth Circuit has applied *Woods* in cases where good-time credits were lost.  *Id.* at 197 n.1.

Nevertheless, the Fifth Circuit precedent continues to follow *Woods* without reconciliation (or even reference) to *Edwards* and its progeny.  As a result, the undersigned is compelled to address the retaliation claim against Officer Kelly despite its apparent connexity with the validity of Guy's disciplinary conviction and loss of good-time sentence, neither of which has been overturned, and despite the fact that other courts would bar the claims from review at this time under *Heck* as applied by *Edwards*.  *See e.g.*, *Antoine v. Ramos*, 497 F. App'x 631, 634 (7th Cir. 2012) (noting that *Heck* and *Edwards* would bar a § 1983 retaliation suit if the wrongful disciplinary action resulted in the loss of good-time credits); *Brown v. Kavanaugh*, 393 F. App'x 455, 2010 WL 3377602, at *1 (9th Cir. 2010) (same citing *Edwards*); *Brown v. Cline*, 319 F. App'x 704, 705-06 (10th Cir. 2009) (same, citing *Heck* and *Edwards*); *Razzoli v. Director, Bureau of Prisons*, 293 F. App'x 852, 857 (3rd Cir. 2008) (same, citing *Edwards*).

A.     **Standards of Review**

1.     **Motion to Dismiss**

Officer Kelly submits her motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which allows the Court to dismiss a complaint for failure to state a claim upon which any relief may be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff.  *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011); *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F .3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and "[t]he plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Guidry*, 512 F.3d at 180 (quotations marks and citation omitted). The United States Supreme Court also has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

In determining whether a complaint states a claim that is plausible on its face, the Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, as mentioned above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *Rhodes v. Prince*, 360 F. App'x 555, 557-58 (5th Cir. 2010). In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See id*. Furthermore, the factual allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In resolving the motion, the Court is generally limited to considering only those allegations appearing on the face of the complaint. However, matters of public record, orders, items appearing

in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Interm. Unit v. Penn. Blue Shield,* 896 F.2d 808, 812 (3rd Cir. 1990). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F. 3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). The Court will consider the grievance and disciplinary records referenced by the plaintiff and provided by the defendants on the Court's order.

When reviewing a *pro se* complaint, the United States Fifth Circuit Court of Appeals has held that the Court must employ less stringent standards. *Bohannan v. Doe*, 527 F. App'x 283, 2013 WL 2631197, at *4 (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (Table, Text in Westlaw). In the prisoner context, in *Taylor v. Gibson*, 529 F.2d 709 (5th Cir. 1976), the Court explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided [to] the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Id.* at 713-14; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### 2.   Qualified Immunity Defense

Qualified immunity shields government officials from individual liability for performing discretionary functions, unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Colston v. Barnhart*, 130 F.3d 96, 98 (5th Cir. 1997); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532-33 (5th Cir. 1997) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v.*

*Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). To assess a defendant's qualified immunity defense, the Court utilizes a two-step process. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011); *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000); *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998) (on appeal after remand); *Colston*, 130 F.3d at 99. Courts have discretion to decide which prong of the qualified-immunity analysis to address first. *Morgan*, 659 F.3d at 371 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

The first step is to determine whether the plaintiff has alleged a violation of a clearly established constitutional right under currently applicable constitutional standards. *Jacobs*, 228 F.3d at 393; *Hare*, 135 F.3d at 325; *Coleman*, 113 F.3d at 533. In determining whether a right is clearly established, this Court looks to precedent from the Fifth Circuit and the Supreme Court. *McClendon*, 305 F.3d at 322. Therefore, a right is considered to be clearly established if, based on pre-existing law, the unlawfulness of the conduct in question is apparent. *Id.* In other words, the right is clearly established if its "'contours . . . [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (other citations omitted); *accord Foster v. City of Lake Jackson*, 28 F.3d 425, 29 (5th Cir. 1994).

When the plaintiff alleges a constitutional violation so as to satisfy the first prong, the second step requires the Court to determine whether defendant's conduct was objectively reasonable under existing clearly established law. *Glenn v. Tyler*, 242 F.3d 307, 312 (5th Cir. 2001); *Jacobs*, 228 F.3d at 393; *Foster*, 28 F.3d at 428-29. Officials who act reasonably but mistakenly are still entitled to the defense. *Ashcroft v. al-Kidd*, __ U.S. __, 131 S. Ct. 2074, 2085 (2011). "When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *al-*

*Kidd*, 131 S. Ct. at 2085 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986)); *see also Creighton*, 483 U.S. at 641.  The Court can determine as a matter of law whether a defendant is entitled to qualified immunity and, specifically, whether a defendant's conduct was objectively reasonable.  *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *White v. Balderama*, 153 F.3d 237, 241 (5th Cir. 1998); *Colston*, 130 F.3d at 99.

In response to a qualified immunity defense, "plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to the constitutional violation." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir.1999); *see also*, Fed. R. Civ. P. 7(a).  The heightened pleading standard applicable in cases defended on qualified immunity grounds requires a plaintiff to plead "with factual detail and particularity, not mere conclusory allegations." *Id.*; *see also Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995).  In the § 1983 context, this standard translates in part into the requirement that the plaintiff "identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Anderson*, 184 F.3d at 443; *DeLeon v. City of Dallas*, 141 F. App'x 258, 261 (5th Cir. 2005).

**B.     Retaliation Claim**

The first step in the Court's consideration of Officer Kelly's qualified immunity defense is to determine whether Guy has in fact alleged a violation of a clearly established constitutional right under currently applicable constitutional standards.  Guy alleges that Officer Kelly retaliated against him for utilizing the administrative remedy procedure by filing disciplinary charges based on his exercise of free speech within the grievance complaint.  As noted above, he claims that this violated

both his First Amendment and Fourteenth Amendment rights to file a grievance complaint against the prison officials.

To prove retaliation, Guy must show that (1) he invoked a specific constitutional right, (2) Officer Kelly had the intent to retaliate against him for his exercise of the right, (3) a retaliatory adverse act occurred, and (4) causation. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). To demonstrate the causation, the plaintiff must establish that but for the retaliatory motive the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998); *Woods*, 60 F.3d at 1166.

Conclusory allegations of retaliation are insufficient, which means that a plaintiff must allege more than his personal belief that he was the victim of retaliation. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (citations omitted). The plaintiff instead must present direct evidence or "allege a chronology of events from which retaliation may plausibly be inferred" that show the defendant's actions were taken in retaliation for his filing of grievances. *See Woods*, 60 F.3d at 1166.

As discussed in the Court's prior rulings, Guy has outlined a chronology of the events leading up to Officer Kelly's filing of the disciplinary charges against him. Guy has not alleged, however, that he had any particular history of difficulty with Officer Kelly personally nor has he shown a motivating factor other than the fact that RCC-2013-14 was filed against other prison staff members. He acknowledges that Officer Kelly, in her role at the prison, processed other grievances before and after this grievance complaint. Any suggestion of motivation is brought into question by Guy's concession that he had never before received disciplinary charges for filing numerous prior grievances against prison officials at RCC and other prisons. In other words, the only "motivation" assigned by Guy is simply that Kelly is also employed at the prison with the officials named in his

grievance complaint.  He does not allege that Officer Kelly was involved in the behavior by the other prison staff or that she had any relationship with Guy at all prior to the filing of the disciplinary charges other than to act in her role to process his prior grievances without incident or interruption.

The Court therefore is not convinced that Guy has alleged sufficient facts to establish a retaliatory motive or chronology of events related to Officer Kelly from which one could be inferred. Nevertheless, even if motivation is inferred from that chronology, the Court will consider the remaining factors.  The Court has already determined one of those factors, as Officer Kelly concedes, that is that the disciplinary conviction and sentence were more than a *de minimis* result from the alleged retaliatory actions.

The Court now turns the focus to whether Guy engaged in or invoked a specific constitutional right which led Officer Kelly to file the disciplinary charges.  The crux of Officer Kelly's motion to dismiss urges the Court to find that no constitutional violation occurred.  This argument curiously is made in spite of Officer Kelly's urging of a qualified immunity defense which requires a finding that in fact a constitutional violation did occur.  *See al-Kidd*, 131 S. Ct. at 2080; *Morgan*, 659 F.3d at 359.  Nevertheless, for the following reasons, the Court finds that Guy was not engaged in a protected First Amendment act for which the disciplinary charges were brought.

A prisoner has a First Amendment right to file grievances in accordance with prison procedures to complaining about the conditions of their confinement or a guard's misconduct.  *See Morris*, 449 F.3d at 686; *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989).  However, the First Amendment is not impinged by the prison official's necessary limitations placed on an inmate's free speech.  *See McNamara v. Moody*, 606 F.2d 621, 623 n.3 (5th Cir. 1979) ("The exigencies of prison

administration justify . . . more stringent restrictions on prisoners' speech and association than would be permissible on the outside."); *see also Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125 (1977) ("The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration.").

Thus, "[a] prison inmate is entitled to his First Amendment right to freedom of expression so long as it is not inconsistent with his status as a prisoner and does not adversely affect a legitimate state interest." *Jackson*, 864 F.2d at 1248. While an inmate may "retain, in a general sense, a right to criticize prison officials," *Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 864 (5th Cir. 2004), there is no established constitutional right to threaten prison officials in violation of established prison policies. *See e.g.*, *Everett v. Baca*, 514 F. App'x 520, 521 (5th Cir. 2013) (inmate gave threatening note to nurse because he was discontent with his medical care); *accord*, *United States v. Bellazerius*, No. 05-095, 2006 WL 2631937, at *1, *3 (E.D. La. Sep. 12, 2006) (recognizing that there is no First Amendment right to harass or intimidate government officials).

Where a prison has a regulation or rule which prohibits disrespectful, inappropriate, abusive, or obscene language, the use of language that is otherwise punishable is not protected merely because it appears in a grievance complaint. *Banda v. Corniel*, No. 13-4240, 2015 WL 1013619, at *1, *3 (D.N.J. Mar. 06, 2015) (citing *Torres v. Clark*, 522 F. App'x 103, 106 (3d Cir. 2013)). In this case, Guy's language in RCC-2013-14 was found by the disciplinary board to be sufficiently threatening and disrespectful to warrant the charges of defiance and disrespect.

Although the grievance complaint copies provided to the Court do not reflect the particular portions "highlighted" by Officer Kelly, those pages reflect language that could be considered

18

disrespectful and threatening.  For example, on page two of his grievance, Guy accused Sergeant

Polk of being a "closet" homosexual who engaged in "sexual contact" with homosexual inmates on

the Sun Unit.[15]   On the following pages, pages three and four, he made additional reference to

improper sexual conduct by other security officers and referred to them as "very stupidly hipotized

[sic]" or hypnotized by Sergeant Polk.   He described himself as "one of the most dangerous man

in this facility [sic]."  He stated that any man who made his "blood to show" would never again

forget  not to let that happen, and that the only reason he was convicted was because the victim lived

to tell about it.   Guy further stated that he is in protective custody to keep him from hurting his

enemies and men like Sergeant Polk, and his "C.I.'s" like Sergeant Temple.   In addition, on page

four, Guy specifically posed to Warden Tanner "just where is your mind and your sense," before

referring to Sergeants Polk, Alfred and Spears as ignorant.

   The language appearing in Guy's grievance complaint RCC-2013-14 reasonably amounted

to threatening and certainly disrespectful and defiant.  Therefore, accepting the disciplinary board's

findings and conviction as it stands,[16] the prohibited statements as determined by the disciplinary

board, would not be constitutionally protected and would constitute a "true threat" to prison security,

as argued by Officer Kelly.  *See Torres*, 522 F. App'x at 106 (citing *Watts v. United States*, 394 U.S.

705, 707 (1969) and *United States v. Fullmer*, 584 F.3d 132, 154 (3d Cir. 2009)); *see also*, *Rollins*

*v. Kerestes*, No. 13-7473, 2015 WL 418154, at *2 (E.D. Pa. Jan. 30, 2015).

   Therefore, because Guy's statements violated the prison's permissible restrictions on Guy's

First Amendment right to free speech, the statements were not constitutionally protected and cannot

---

[15]Rec. Doc. No. 28.

[16]As discussed thoroughly above, this Court does not have authority at this time to reevaluate the veracity of the charges as proven at the disciplinary hearing.

form the basis of a retaliation claim against Officer Kelly.  *Torres*, 522 F. App'x at 105-06 (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001), *Cowans v. Warren*, 150 F.3d 910, 912 (8th Cir. 1998) & *Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir. 1986)).  Even though he may now contend that he did not mean to make threats or that Kelly misinterpreted his statements, Guy falls short of establishing the violation of a protected right where he had no right to use the inappropriate language in violation of prison policy.  *See Brown v. Miss. Dept. of Corr.*, No. 07CV140, 2008 WL 4960467 at *6 (S.D. Miss. Nov. 20, 2008).  This resolve is consistent with the well settled rule that, where the prisoner's conduct otherwise justified the disciplinary charge, he does not meet the "but for" requirement to support a retaliation claim.  *See McDonald*, 132 F.3d at 231; *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996); *Sylvester v. Cain*, 311 F. App'x 733, 735-36 (5th Cir. 2009).  In other words, Guy's use of the impermissible threats and disrespectful terms were subject to disciplinary action (or in violation of prison rules) no matter where the statements were made or written.

As outlined previously, Guy concedes in his pleadings that he was able to fully pursue resolution of the grievance complaint in RCC-2013-14, as well as the many other grievance complaints he filed, including those related to Officer Kelly and the other prison officials at RCC who reviewed his appeals.  He was not in any way deterred from exercising his protected right to file grievances and was only punished for his unacceptable language in that one grievance complaint.

For all of the foregoing reasons, the Court finds that Guy has not alleged a violation of a clearly established constitutional right under currently applicable constitutional standards.  His retaliation claim fails where he has not demonstrated that he exercised a constitutional right when he used threatening and disrespectful language in RCC-2013-14.  His claim should be dismissed

rendering it unnecessary for the Court to further consider the defendant's qualified immunity defense.

## IV.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Wilfred Guy Sr.'s claims against defendant Beverly T. Kelly, for false disciplinary charges and violation of due process be *sua sponte* **DISMISSED WITH PREJUDICE** for failure to state a claim for which relief can be granted until such time as the *Heck* and *Edwards* conditions are met.

It is further **RECOMMENDED** that the defendant Officer Beverly T. Kelly's Motion to Dismiss  pursuant to Fed. R. Civ. P. 12(b)(6) be **GRANTED** to the extent it seeks dismissal of Guy's retaliation claim against Officer Kelly for failure to assert a constitutional violation and that Guy's retaliation claim against Officer Kelly be **DISMISSED WITH PREJUDICE** for failure to state a claim for which relief can be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[17]

New Orleans, Louisiana, this day of 25th of June, 2015.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[17]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.